THE HONORABLE THOMAS S. ZILLY

1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIE-MENSION CORPORATION, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>      vs.<br><br>DUN & BRADSTREET CREDIBILITY CORPORATION, DUN & BRADSTREET CORPORATION and DUN & BRADSTREET, INC.,<br><br>                Defendants. | **D&B DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINTS**<br><br>NOTE ON MOTION CALENDAR: May 29, 2015<br><br>ORAL ARGUMENT REQUESTED<br><br>Case No. 2:14-cv-00855-TSZ |
| VINOTEMP INTERNATIONAL CORPORATION and CPRINT®, Inc., Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>      vs.<br><br>DUN & BRADSTREET CREDIBILITY CORPORATION, DUN & BRADSTREET CORPORATION and DUN & BRADSTREET, INC.,<br><br>                Defendants. | Case No. 2:14-cv-01021-TSZ |

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

1
2
3
4
5
6
7
8

ALTAFLO, LLC, Individually
and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

DUN & BRADSTREET CREDIBILITY
CORPORATION, DUN & BRADSTREET
CORPORATION and DUN & BRADSTREET,
INC.,

Defendants.

Case No. 2:14-cv-01288-TSZ

9
10
11
12
13
14
15
16

FLOW SCIENCES, INC., Individually
and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

DUN & BRADSTREET CREDIBILITY
CORPORATION, DUN & BRADSTREET
CORPORATION and DUN & BRADSTREET,
INC.,

Defendants.

Case No. 2:14-cv-01404-TSZ

17
18
19
20
21
22
23
24
25
26
27
28

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................II

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ...............................................................................4

    I.       BACKGROUND ...............................................................................4

    II.      PLAINTIFFS' PURPORTED EXPERIENCES ..........................................5

           A.     Die-Mension Complaint..................................................5

           B.     Vinotemp Complaint.......................................................6

                  1.     Plaintiff Vinotemp ...............................................6

                  2.     Plaintiff CPrint......................................................7

           C.     Altaflo Complaint ..........................................................8

           D.     Flow Sciences Complaint ...............................................8

ARGUMENT ...............................................................................................9

    I.       THE COURT SHOULD DISMISS ALL OF PLAINTIFFS'
           NEGLIGENCE CAUSES OF ACTION BECAUSE THEY
           ARE PRECLUDED BY D&B'S QUALIFIED PRIVILEGE ....................9

    II.      THE COURT SHOULD DISMISS THE DEFAMATION
           AND UNFAIR TRADE PRACTICES CLAIMS OF THE
           DIE-MENSION, VINOTEMP, AND ALTAFLO
           COMPLAINTS FOR FAILURE TO ADEQUATELY
           PLEAD MALICE ......................................................................12

           A.     Pleading Malice Under California, New Jersey, and
                    Ohio Law Requires More Than Conclusory
                    Allegations ....................................................................12

           B.     Plaintiffs' Factual Allegations Fail to Establish Malice ...............14

           C.     Plaintiffs' Theory of Malice is Implausible ...................................17

CONCLUSION..............................................................................................19

D&B DEFS' MOTION TO         i
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

**Cases**

4

*A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades
   Council*, 73 Ohio St. 3d 1 (1995)..........................................................................12, 15

6

*Arista Records, Inc. v. Flea World, Inc.,* 356 F. Supp. 2d 411 (D.N.J.
   2005) ................................................................................................................13, 17

7

8

*Armijo v. Yakima HMA, LLC,* 868 F. Supp. 2d 1129 (E.D. Wash. 2012) ........................12

9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..............................................................................18

10

*Bainhauer v. Monoukian*, 215 N.J. Super. 9 (N.J. Super. Ct. App. Div.
   1987) ..........................................................................................................................10

11

12

*Batdorf v. Trans Union*, No. C00-0501 CRB, 2000 WL 635455 (N.D. Cal.
   May 8, 2008)..............................................................................................................10

13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................18

14

*Boykin Anchor Co. v. AT & T Corp.*, 825 F. Supp. 2d 706 (E.D.N.C. 2011)....................11

15

16

*Bryan v. Deloitte Tax LLP*, No. 3:12-CV-02606, 2013 WL 5962071 (N.D.
   Ohio Nov. 6, 2013) ................................................................................................13, 17

17

*Burns v. Rice*, 157 Ohio App. 3d 620 (Ohio Ct. App. Jun. 22, 2004) ..............................16

18

*Byvank v. Fid. Orthopedic, Inc.*, No. 17465, 1999 WL 335056 (Ohio Ct.
   App. May 28, 1999)...................................................................................................10

19

20

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)....................10

21

*Crawford v. Geiger*, 996 F. Supp. 2d 603 (N.D. Ohio 2014) .....................................13, 14

22

*Cuenca v. Safeway S.F. Emps. Fed. Credit Union*, 180 Cal. App. 3d 985
   (Ct. App. 1986) .........................................................................................................12

23

*Dairy Stores, Inc. v. Sentinel Pub. Co.*, 104 N.J. 125 (1986) ...........................................12

24

25

*Dairy Stores, Inc. v. Sentinel Pub. Co., Inc.*, 191 N.J. Super. 202 (N.J.
   Super. Ct. Law Div. 1983), *aff'd*, 198 N.J. Super. 19 (N.J. Super. Ct.
   App. Div. 1984) .........................................................................................................11

26

27

*DeAngelis v. Hill*, 180 N.J. 1 (2004)............................................................................16, 17

28

*Donato v. Moldow*, 374 N.J. Super. 475 (App. Div. 2005) ...............................................13

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

ii

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

*Durando v. Nutley Sun*, 209 N.J. 235 (2012) ...................................................................15

*Eclectic Props. E., LLC v. The Marcus & Millichap Co.*, C-09-00511
   RMW, 2012 WL 713289 (N.D. Cal. Mar. 5, 2012), *aff'd*, 751 F.3d 990
   (9th Cir. 2014) ...........................................................................................................19

*Felton v. Schaeffer*, 229 Cal. App. 3d 229 (Ct. App. 1991) ..............................................11

*Gaber v. Mortg. Asset Research Inst., Inc.*, No. Civ. 08-4926, 2010 WL
   3039885 (D.N.J. Aug. 3, 2010).......................................................................... *passim*

*Gressett v. Contra Costa Cnty.*, No. C-12-3798 EMC, 2013 WL 2156278
   (N.D. Cal. May 17, 2013) .....................................................................................14, 16

*H.E. Crawford Co. v. Dun & Bradstreet, Inc.*, 241 F.2d 387 (4th Cir.
   1957) ...........................................................................................................................10

*Hailstone v. Martinez*, 87 Cal. Rptr. 3d 347 (Ct. App. 2008)...........................................15

*Jackson v. Mills Corp.*, No. C-07-00662 EDL, 2007 WL 2705215 (N.D.
   Cal. Sept. 14, 2007)....................................................................................................14

*Kacludis v. GTE Sprint Commc'ns Corp.*, 806 F. Supp. 866 (N.D. Cal.
   1992) ...........................................................................................................................13

*Lipsky v. Conn. Gen. Life Ins. Co.,* No. 13-CV-00105 DMC JBC, 2013
   WL 5354511 (D.N.J. Sept. 24, 2013) ........................................................................13

*Martin v. Kearney,* 51 Cal. App. 3d 309 (Ct. App. 1975) .................................................13

*Moriarty v. Classic Auto Grp., Inc.*, No. 13-5222 JBS/AMD, 2014 WL
   884761 (D.N.J. Mar. 6, 2014).....................................................................................13

*Ohio Poly Corp. v. Packaging & Handling Supplies Co.*, 541 N.E.2d 485
   (Ohio Ct. App. 1988) ..................................................................................................10

*Pavlovsky v. Bd. of Trade of S.F.*, 171 Cal. App. 2d 110 (Ct. App. 1959) .................13, 17

*Pezzuti v. Booras,* 200 F. App'x 683 (9th Cir. 2006) .......................................................11

*Pham v. Bank of Am.*, No. C10-02613, 2010 WL 3184263 (N.D. Cal. Aug.
   11, 2010) .....................................................................................................................14

*Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989).....................13, 15

*Rudwall v. Blackrock, Inc.*, 289 F. App'x 240 (9th Cir. 2008)..........................................19

*Smith v. Hatch*, 271 Cal. App. 2d 39 (Ct. App. 1969) .......................................................15

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

iii

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

*Tajblik v. Dennis,* 2012-Ohio-6251, 2012 WL 6738303 (Ohio Ct. App. Dec. 31, 2012)................................................................................11

*Worpenberg v. Kroger Co.,* 2002-Ohio-1030, 2002 WL 362855 (Ohio Ct. App. Mar. 8, 2002)........................................................................11

*Wrigley v. Aquaviva*, No. CIV. 2:10-703 WBS, 2010 WL 4718780 (E.D. Cal. Nov. 12, 2010)....................................................................14

*Wynn v. Chanos,* No. 14-CV-04329-WHO, 2014 WL 7186981 (N.D. Cal. Dec. 16, 2014)........................................................................15

**Statutes**

Cal. Civ. Code § 47(c) (2015) ........................................................10, 11

Cal. Civ. Proc. Code § 340 (2015) ......................................................14

N.J. STAT. ANN. 2A:14-3 (2015) .......................................................14

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

iv

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants The Dun & Bradstreet Corporation and Dun & Bradstreet, Inc. (together, "D&B" or "D&B Defendants") hereby move to dismiss causes of action alleged in four class action complaints filed on March 2, 2015, by plaintiffs Die-Mension Corporation ("Die-Mension") (the "Die-Mension SAC"),[1] Vinotemp International Corporation and CPrint, Inc.® ("Vinotemp" and "CPrint") (the "Vinotemp FAC"),[2] Altaflo, LLC ("Altaflo") (the "Altaflo FAC"),[3] and Flow Sciences, Inc. ("Flow Sciences" or "FSI") (the "FSI FAC"),[4] (together, the "Non-Washington Plaintiffs").

## **PRELIMINARY STATEMENT**

Last year, this Court allowed three Washington state law claims – defamation, negligence, and a violation of Washington's Unfair Competition Act – brought by plaintiff O&R Construction, LLC ("O&R") against D&B to proceed because the Court concluded that O&R had adequately alleged malice in accordance with Washington state law requirements. Subsequently, O&R's attorneys filed actions on behalf of the Non-Washington Plaintiffs in Ohio, California, New Jersey, and North Carolina, each purporting to allege claims under the laws of their respective jurisdictions based on a legal theory similar to that of O&R (together, the "Non-Washington Claims").

But unlike the O&R Washington law claims, those Non-Washington Claims could not overcome a Rule 12(b)(6) motion in this Court for two reasons:  (1) the defamation claims in three of the four complaints were time-barred, and (2) all causes of action in three of the four complaints failed to plead malice in accordance with their respective state law standards.  After D&B raised these points in its initial motion to dismiss, for reasons of judicial economy the parties agreed that D&B would withdraw its motion and plaintiffs could voluntarily amend their complaints.  Plaintiffs' amendments, however, do not save their failed claims because their complaints suffer from the same fundamental flaws of the

---

[1] 2:14-cv-00855-TSZ.

[2] 2:14-cv-01021-TSZ.

[3] 2:14-cv-01288-TSZ.

[4] 2:14-cv-01404-TSZ

1    earlier versions of their complaints – they lack facts showing that D&B acted with malice

2    and plead facts affirmatively demonstrating that it is implausible that D&B could have acted

3    with malice.  Consequently, D&B once again moves to dismiss plaintiffs' claims.

4         As an initial matter, the Court should dismiss all of the negligence claims because

5    they are precluded by plaintiffs' own allegations.  Under the laws of Ohio, California, New

6    Jersey, and North Carolina, the statements that D&B makes in its credit reports are protected

7    by a qualified privilege that can only be overcome if D&B acts with malice. The privilege

8    was designed to protect credit reporting agencies in this very situation – when a disgruntled

9    business owner is upset by an alleged mistake in his/her business credit report.  Here,

10   plaintiffs are attempting to make an end-run around the privilege by alleging negligence

11   causes of action premised on the purported defamatory conduct.  Attempted end-runs such as

12   these have been rejected under the laws of Ohio, California, New Jersey, and North Carolina.

13   As one court recently described it:  "when a plaintiff harmed by defamatory speech attempts

14   to sue in negligence for underlying negligent acts, such a claim for negligence is simply an

15   intolerable attempt to circumvent the heightened standards of defamation law." *Gaber v.*

16   *Mortg. Asset Research Inst., Inc.*, No. Civ. 08-4926, 2010 WL 3039885, at *3 (D.N.J. Aug.

17   3, 2010) (applying New Jersey law).  This Court too should dismiss these precluded

18   negligence claims.

19        In addition, the Court should dismiss the defamation and unfair trade practice causes

20   of action of the Die-Mension, Vinotemp, and Altaflo complaints.  Unlike the O&R claims,

21   under the laws of Ohio, California, and New Jersey, merely alleging that D&B acted with

22   malice is insufficient.  Instead, plaintiffs are required to plead facts showing that D&B

23   knowingly input false information, or at least acted with reckless disregard for the truth.  And

24   stripped of their conclusory allegations, plaintiffs' claims here boil down to allegations that

25   D&B reported inaccurate information in its credit reports.  But, even if this were true, these

26   allegations amount to nothing more than a claim of non-actionable negligence by D&B, not

27   the malicious conduct required by law.  Because – even after plaintiffs were given leave to

28

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

2

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

1    replead their claims – these required facts are glaringly absent from the Die-Mension,

2    Vinotemp, and Altaflo complaints, the complaints should be dismissed in their entirety.

3         Moreover, plaintiffs should not be given yet another chance to replead their claims

4    because their entire theory of the case runs contrary to an actionable theory of malice.

5    Plaintiffs allege that D&B has been in business for more than 170 years; has an excellent

6    reputation for preparing credit reports; is trusted by the U.S. government and large

7    corporations alike; makes more than 1.5 million daily updates to its database; spun off its

8    credit-on-self business when it thought that business was interfering with its core business of

9    creating credit reports; and gets royalties from DBCC on the sale of credit-on-self products.

10   They also allege that there were some inaccuracies in plaintiffs' respective credit reports; that

11   the third party inquiry numbers D&B reported to DBCC were inaccurate; that plaintiffs

12   purchased the CreditBuilder product from DBCC in order to fix the alleged inaccuracies; and

13   that they continued to have similar problems even after purchasing the product.  Rather than

14   concluding that D&B may have made errors in some credit reports and in some of the

15   inquiry numbers it sent to DBCC, plaintiffs illogically conclude that D&B must have

16   purposely inserted inaccurate facts into plaintiffs' credit reports and must have knowingly

17   manipulated the inquiry numbers it sent to DBCC for the purpose of getting plaintiffs to

18   purchase CreditBuilder from DBCC.  In other words, in order to provide DBCC with a

19   selling opportunity, D&B put at risk its 170-year-old reputation, and undermined its core

20   business of preparing and selling accurate credit reports.  And on top of that, D&B allegedly

21   did not even bother to cover up the wrong-doing by fixing the reports after the businesses

22   purchased CreditBuilder.  This theory is not only unsupported by actual facts, but also flies

23   in the face of common sense.  Consequently, the Court should dismiss all the claims of the

24   Die-Mension, Vinotemp, and Altaflo complaints with prejudice as further amendment would

25   be futile.[5]

26   _____

27   [5] As detailed in D&B's motion to dismiss the O&R Second Amended Complaint [Dkt. # 82 of 2:12-cv-02184-TSZ], D&B respectfully submits that all of the Non-Washington Plaintiffs' causes of action also fail for lack of Article III standing, implausibility, and lack of duty with respect to the negligence claims.  In light of the Court's statements at the December 17, 2014 conference concerning the arguments made in the O&R motion to

28

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

3

## STATEMENT OF FACTS[6]

### I.   BACKGROUND[7]

The D&B Defendants are corporations that maintain their headquarters and principal places of business in Short Hills, New Jersey.  *See* Die-Mension SAC ¶ 12.

D&B maintains databases containing millions of data points regarding the trade experiences of businesses and corporations, also known as subject companies, from various third party sources, such as suppliers and vendors, who have had dealings with these subject companies.  *Id.* ¶ 2.   Based on this information, D&B issues credit reports, scores, and ratings, which include hundreds of records and statistics about the subject companies, such as how often the subject company does not pay on time, and the current financial health of the subject company.  *See id.* ¶ 1.

As plaintiffs admit, "[t]he Dun & Bradstreet name has been synonymous with business credit for over 1[7]0 years" and is the market leader for business reports.  *Id.* ¶ 15.  D&B's excellent reputation has led it to be trusted by the U.S. government and large corporations, such as Wal-Mart, to supply accurate credit reports.  *Id.* ¶ 31.  D&B distributes a Data Universal Number System ("DUNS") number to any business that wishes to apply for a government contract.  *Id* ¶ 15.  The DUNS number is a unique ID similar to a federal tax ID number which businesses are required to submit when applying for credit, loans, or government bids, and which vendors or others may use to pull financial credit information about the business.  *Id.*  D&B also issues a Supplier Evaluation Risk ("SER") rating used by certain large government agencies to qualify businesses to do work with the government.  *Id.* ¶ 31.

---

dismiss, D&B will not repeat these arguments in the instant brief.  D&B, however, expressly reserves its rights as to these points.

[6] The factual allegations of the Non-Washington Complaints are treated here as true only for purposes of the instant motion.

[7] All of the background factual allegations in this section are alleged in each of the four Non-Washington Complaints.  For the sake of streamlining the instant pleading, D&B has only cited to the relevant paragraphs in the Die-Mension Complaint.

**D&B DEFS' MOTION TO DISMISS COMPLAINTS** (2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ) (2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

4

**SHEARMAN & STERLING LLP** FOUR EMBARCADERO CENTER, STE. 3800 SAN FRANCISCO, CA 94111-5994 (415) 616-1100

Co-defendant DBCC is a limited liability company with its headquarters and principal place of business in Malibu, California. *Id.* ¶ 11.  In July 2010, D&B sold its credit-on-self line of business to DBCC by executing an Asset Purchase Agreement. *Id.* ¶ 19.  Plaintiffs allege that D&B planned to "kill off" this line of business because it interfered with D&B's core business of producing accurate credit reports. *Id.* ¶ 18.  D&B and DBCC are currently adversaries in a litigation pending in the Supreme Court of New York. *Id.* ¶ 29.

Plaintiffs allege that D&B and DBCC defrauded small businesses through the sale of CreditBuilder, a credit-on-self product that DBCC designed to help businesses monitor their D&B credit reports.  According to plaintiffs, D&B, without disclosing to DBCC, reported inaccurate inquiry numbers to DBCC – defined by plaintiffs as an instance where "an entity has pulled D&B's report about a small business." *Id.* ¶ 38.  The inquiries were purportedly inaccurate because they included instances where a D&B employee pulled a report and were not de-duplicated when a third party pulled a report multiple times. *Id.*  Along with the inquiry numbers, plaintiffs claim that D&B also included incorrect information in many of the scores and other data it reported to DBCC because it doesn't "keep accurate and current records." *Id.* ¶¶ 34-35.  In turn, DBCC used D&B's data to market CreditBuilder to the putative class members.

## II.    PLAINTIFFS' PURPORTED EXPERIENCES

The Non-Washington Plaintiffs are five unrelated businesses located in Ohio, California (two businesses), New Jersey, and North Carolina, respectively, which claim that they are subjects of D&B reports containing inaccurate information, and that they purchased CreditBuilder from DBCC to correct the inaccurate information. *See* Die-Mension SAC ¶¶ 3-4; Vinotemp FAC ¶¶ 3-4, Altaflo FAC ¶¶ 3-4, and FSI FAC ¶¶ 3-4.

### A.    Die-Mension Complaint

Plaintiff Die-Mension is an Ohio corporation with its principal place of business in Brunswick, Ohio. *See* Die-Mension SAC ¶ 10.  Die-Mension alleges that prior to February 2012, ten years after receiving a DUNS number from D&B, its credit ratings and scores were

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

5

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

negatively impacted due to D&B falsely entering negative payment experiences such as "slow pay" entries on its report. *Id.* ¶¶ 40,44-45. In addition, Die-Mension alleges that D&B placed false negative payment experiences on its credit report without exercising any due diligence to determine if the reported experiences were true. *Id.* ¶ 44. Finally, Die-Mension alleges that D&B included internally-generated inquiries and duplicate inquiries by the same subscriber in its calculation of inquiry rates, which D&B allegedly sent to DBCC and which allegedly affected Die-Mension's credit scores. *Id.* ¶¶ 47, 51.

Die-Mension subsequently bought CreditBuilder from DBCC in April 2012 for $39.99 per month. *Id.* ¶ 54. After purchasing CreditBuilder, Die-Mension alleges that it continued to receive alerts that its SER Rating and Financial Stress Score had risen due to suppliers providing negative payment experiences to D&B. *Id.* ¶¶ 59-61. Die-Mension also alleges that it continued to receive new inquiry alerts into its records. *Id.* ¶ 62.

Die-Mension alleges that the negative payment experiences and inflated inquiry rates must have been due to D&B's malicious manipulation for the sole purpose of providing that information to DBCC to use as part of a marketing campaign to sell its CreditBuilder product. *Id.* ¶¶ 38-39.

**B.    Vinotemp Complaint**

**1.    Plaintiff Vinotemp**

Plaintiff Vinotemp is a California corporation with its principal place of business in Irvine, California. *See* Vinotemp FAC ¶ 10. Vinotemp alleges that prior to October 28, 2010, its credit ratings and scores were negatively impacted due to D&B falsely entering negative payment experiences such as dismissed lawsuits on its report. *Id.* ¶¶ 45, 47. In addition, Vinotemp alleges that D&B placed false negative payment experiences on its credit report without exercising any due diligence to determine if the reported experiences were true. *Id.* ¶ 45. Finally, Vinotemp alleges that D&B included internally-generated inquiries and duplicate inquiries by the same subscriber in its calculation of inquiry rates, which D&B allegedly sent to DBCC and which allegedly affected Vinotemp's credit scores. *Id.* ¶¶ 48, 50, 52.

Vinotemp purchased CreditBuilder on October 28, 2010 for $549, again on November 21, 2012 for $799, and again on November 29, 2013 for $1,100. *Id.* ¶ 42. After purchasing CreditBuilder, Vinotemp alleges that false negative payment experiences that had already been disputed continued to appear on its credit report. *Id.* ¶ 65-66.

Vinotemp alleges that the negative payment experiences and inflated inquiry rates must have been due to D&B's malicious manipulation for the sole purpose of providing that information to DBCC to use as part of a marketing campaign to sell its CreditBuilder product. *Id.* ¶¶ 39-40.

### 2.   Plaintiff CPrint

CPrint is a California-based company with its principal place of business in Los Angeles, California. *Id.* ¶ 10. CPrint alleges that prior to June 2011, its credit ratings and scores were negatively impacted due to D&B falsely entering negative payment experiences such as "false delinquency" entries on its report. *Id.* ¶ 68, 73. In addition, CPrint alleges that D&B placed false negative payment experiences on its credit report without exercising any due diligence to determine if the reported experiences were true. *Id.* ¶ 72. Finally, CPrint alleges that D&B included internally generated inquiries and duplicate inquiries by the same subscriber in its calculation of inquiry rates, which D&B allegedly sent to DBCC and which allegedly affected CPrint's credit scores. *Id.* ¶¶ 74-80.

CPrint purchased CreditBuilder in June 2011 for $850, and again on June 6, 2012 for $799. *Id.* ¶ 67. After purchasing CreditBuilder, CPrint alleges that D&B continued to publish false reports about CPrint's financial health. *Id.* ¶¶ 89-90.

CPrint alleges that the negative payment experiences and inflated inquiry rates must have been due to D&B's malicious manipulation for the sole purpose of providing that information to DBCC to use as part of a marketing campaign to sell its CreditBuilder product. *Id.* ¶¶ 39-40.

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

7

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

## C.     Altaflo Complaint

Altaflo is a New Jersey-based company.  Altaflo FAC ¶ 10.  Altaflo alleges that prior to May 2011, its credit ratings and scores were negatively impacted due to D&B falsely entering negative payment experiences such as late payment entries and failing to determine whether reported experiences were true on its report.  *Id*. ¶¶ 45-47.  In addition, Altaflo alleges that D&B placed false negative payment experiences on its credit report without exercising any due diligence to determine if the reported experiences were true.  *Id*. ¶ 45.  Finally, Altaflo alleges that D&B included internally-generated inquiries and duplicate inquiries by the same subscriber in its calculation of inquiry rates, which D&B allegedly sent to DBCC and which allegedly affected Altaflo's credit scores.  *Id*. ¶¶ 48-54.

Altaflo purchased CreditBuilder in May 2011 for $499, and again on May 2012 for $499.  *Id.* ¶ 41.  After purchasing CreditBuilder, Altaflo alleges that D&B continued to publish false information on Altaflo's credit reports, such as the amount of its credit lines and its number of open UCC filings.  *Id*. ¶¶ 62-64.

Altaflo alleges that the negative payment experiences and inflated inquiry rates must have been due to D&B's malicious manipulation for the sole purpose of providing that information to DBCC to use as part of a marketing campaign to sell its CreditBuilder product.  *Id.* ¶¶ 38-39, 51-52.

## D.     Flow Sciences Complaint

Plaintiff Flow Sciences, Inc. is a North Carolina corporation.  FSI FAC ¶ 10. FSI alleges that prior to November 2012, its credit ratings and scores were negatively impacted due to D&B falsely entering negative payment experiences such as "slow pay" entries, an incorrect number of UCC filings, and an incorrect credit limit on its report.  *Id*. ¶¶ 42, 49-50.  In addition, FSI alleges that D&B placed false negative payment experiences on its credit report without exercising any due diligence to determine if the reported experiences were true.  *Id*. ¶ 44.  Finally, FSI alleges that D&B included internally-generated inquiries and duplicate inquiries by the same

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

8

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

1  subscriber in its calculation of inquiry rates, which D&B allegedly sent to DBCC and

2  which allegedly affected FSI's credit scores.  *Id.* ¶¶ 51-58.

3      FSI purchased CreditBuilder on November 14, 2012.  *Id.* ¶ 41.  After

4  purchasing CreditBuilder, FSI alleges that it continued to receive alerts that false items

5  continued to appear on its D&B credit report, such as new inquiries into FSI's record

6  and additional "slow pays."  *Id.* ¶¶ 69-71.

7      FSI alleges that the negative payment experiences and inflated inquiry rates must

8  have been due to D&B's malicious manipulation for the sole purpose of providing that

9  information to DBCC to use as part of a marketing campaign to sell its CreditBuilder

10  product.  *Id.* ¶¶ 37-38.

11                                **ARGUMENT**

12  **I.    THE COURT SHOULD DISMISS ALL OF PLAINTIFFS'**
        **NEGLIGENCE CAUSES OF ACTION BECAUSE THEY ARE**
13      **PRECLUDED BY D&B'S QUALIFIED PRIVILEGE**

14      Each of the Die-Mension, Vinotemp, Altaflo, and FSI complaints allege causes of

15  action for defamation based on purported misstatements in each plaintiff's respective D&B

16  report, as well as negligence and a violation of their respective state law unfair trade

17  practices act based on the same conduct allegedly supporting the defamation claims.  In the

18  Ohio case, Die-Mension alleges that D&B increased its SER Rating from a 6 to a 7 and

19  increased its Financial Stress Score from a 3 to a 4, which allegedly constituted defamation,

20  negligence, and a violation of the Ohio Trade Practices Act.  *See* Die-Mension SAC ¶¶ 60,

21  79-94.  In the California case, Vinotemp alleges that D&B published reports that contained

22  false and inaccurate entries, including that Vinotemp had an SER Rating of 8, which

23  allegedly constituted defamation, negligence, and a violation of the California Unfair

24  Competition Law.  *See* Vinotemp FAC ¶¶ 47, 125-147.  Similarly, in the New Jersey case

25  Altaflo alleges that D&B published a "Live Report" about Altaflo, which allegedly included

26  fictitious inquiries that inflated Altaflo's Financial Stress Score and allegedly constituted

27  defamation, negligence, and a violation of the New Jersey Consumer Fraud Act.  *See* Altaflo

28  FAC ¶¶ 43, 82-96.  And in the North Carolina matter, plaintiff FSI contends that D&B is

D&B DEFS' MOTION TO                              9
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

1   liable for defamation, deceptive trade practices, and negligence for allegedly putting false

2   information into FSI's credit report.  FSI FAC ¶¶ 91-105.

3         Under Ohio, California, New Jersey, and North Carolina substantive law, however,

4   credit reporting agencies are subject to a qualified privilege with respect to defamation

5   claims, requiring a plaintiff to show *actual malice* in order to prevail on the claim.  *See H.E.*

6   *Crawford Co. v. Dun & Bradstreet, Inc.*, 241 F.2d 387, 393 (4th Cir. 1957) ("The delivery of

7   financial information by Dun & Bradstreet, a corporation engaged in the collection and

8   dissemination of such information, to subscribers, and only to subscribers, specifically

9   requesting reports on [plaintiff], would prima facie fall within the scope of privileged

10   communications.") (applying North Carolina law); *Ohio Poly Corp. v. Packaging &*

11   *Handling Supplies Co.*, 541 N.E.2d 485, 488 (Ohio Ct. App. 1988) (applying Ohio law); Cal.

12   Civ. Code § 47(c) (2015); *Batdorf v. Trans Union*, No. C00-0501 CRB, 2000 WL 635455, at

13   *4 (N.D. Cal. May 8, 2008) (applying California law); *Bainhauer v. Monoukian*, 215 N.J.

14   Super. 9, 36 (N.J. Super. Ct. App. Div. 1987) (applying New Jersey law).

15         This privilege not only requires that plaintiffs plead and prove that D&B acted with

16   actual malice when making the alleged defamatory statements and committing the alleged

17   unfair trade practices,[8] but also precludes plaintiffs' negligence claims premised on the

18   conduct supporting their defamation claims.  Under New Jersey law, "plaintiffs are barred

19   not only from suing in negligence for harm caused by the communication of defamatory

20   statements, but also from suing in negligence for any acts that proximately underlie the

21   communication of defamatory statements."  *Gaber v. Mortg. Asset Research Inst., Inc.*, No.

22   Civ. 08-4926, 2010 WL 3039885, at *3 (D.N.J. Aug. 3, 2010) (applying New Jersey law).

23   "The primary rationale for this preclusive effect is that when a plaintiff harmed by

---

[8] *See Byvank v. Fid. Orthopedic, Inc.*, No. 17465, 1999 WL 335056, at *8 (Ohio Ct. App. May 28, 1999) ("Based on our conclusion that [plaintiff] failed to show actual malice so as to defeat the qualified privilege in his defamation claim, [plaintiff's] derivative claim of deceptive trade practice also fails.") (applying Ohio law); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999) ("We 'rejected the claim that a plaintiff may, in effect, plead around absolute barriers to relief by relabeling the nature of the action as one brought under the unfair competition statute.' . . . We found 'the conduct of defendants alleged in the complaint came within the scope of [Civil Code] section 47(b),' and thus was 'absolutely immune from civil tort liability.'") (citation omitted) (applying California law).

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

10

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

defamatory speech attempts to sue in negligence for underlying negligent acts, such a claim for negligence is simply an intolerable attempt to circumvent the heightened standards of defamation law." *Id.; see also Dairy Stores, Inc. v. Sentinel Pub. Co., Inc*., 191 N.J. Super. 202, 217 (N.J. Super. Ct. Law Div. 1983) ("a party who claims that its reputation has been damaged by a false statement cannot circumvent the strictures of the law of defamation or of product disparagement by labeling its action as one for negligence") (applying New Jersey law), *aff'd,* 198 N.J. Super. 19 (N.J. Super. Ct. App. Div. 1984). And under North Carolina law "[c]ourts have traditionally been very cognizant of the distinctions between defamation on the one hand and negligence on the other, and have resisted efforts by plaintiffs to recast an action sounding in the former into one sounding in the latter." *Boykin Anchor Co. v. AT & T Corp*., 825 F. Supp. 2d 706, 712 (E.D.N.C. 2011) (dismissing negligence claim because its allegations put it the claim in "the heartland of defamation") (applying North Carolina law).

California and Ohio law also apply these standards. *See Felton v. Schaeffer*, 229 Cal. App. 3d 229, 238-39 (Ct. App. 1991) ("Our decision to disallow a negligence claim under the facts of this case is buttressed by our recognition that the allowance of a negligence claim under these or similar circumstances would substantially undermine, if not effectively eliminate, the area currently occupied by libel law. . . . [W]e perceive plaintiffs would seek to evade the strictures of libel law and avoid the applicable defenses by framing all libel actions as negligence[.]"); *Pezzuti v. Booras,* 200 F. App'x 683, 684 (9th Cir. 2006) ("The district court properly rejected appellants' negligence claim where the underlying facts gave rise to a defamation claim defeated by privilege under Cal. Civil Code § 47(c).") (applying California law; *Worpenberg v. Kroger Co.,* 2002-Ohio-1030, 2002 WL 362855, at *6 (Ohio Ct. App. Mar. 8, 2002) (affirming dismissal of negligence claim and rejecting the premise that "every person accused of defaming another [is] susceptible to two distinct torts: the first sounding in defamation based upon the statement itself, and the second sounding in negligence based upon the defendant's failure to take reasonable steps to repair or control the damage caused by the statement"); *Tajblik v. Dennis,* 2012-Ohio-6251, 2012 WL 6738303, at *2 (Ohio Ct.

11

App. Dec. 31, 2012) (affirming dismissal of negligence claim precluded because the factual allegations supporting it sounded in defamation).

Accordingly, the Court should dismiss the negligence causes of action of the Die-Mension, Vinotemp, Altaflo, and FSI complaints in order to prevent plaintiffs from circumventing D&B's qualified privilege.

## II.   THE COURT SHOULD DISMISS THE DEFAMATION AND UNFAIR TRADE PRACTICES CLAIMS OF THE DIE-MENSION, VINOTEMP, AND ALTAFLO COMPLAINTS FOR FAILURE TO ADEQUATELY PLEAD MALICE

### A.   Pleading Malice Under California, New Jersey, and Ohio Law Requires More Than Conclusory Allegations

California, New Jersey and Ohio have similar definitions of actual malice.  Under Ohio law, "'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 11-12 (1995) (citation omitted).  California courts have defined malice as "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person" or "reckless disregard for plaintiff's rights."  *Cuenca v. Safeway S.F. Emps. Fed. Credit Union*, 180 Cal. App. 3d 985, 997 (Ct. App. 1986) (citation omitted).  In New Jersey, "[c]ommon-law malice, or malice-in-fact, has meant variously that the statement was published with an improper purpose or ill will, or without belief or reasonable grounds to believe in its truth." *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 104 N.J. 125, 136 (1986).

In contrast to Washington state law (as determined in the *O&R* case),[9] under New Jersey law, state and federal courts have concluded that a plaintiff is required to plead more than mere conclusions to state a claim based on malice.  As the New Jersey Supreme Court has noted, "[i]t is not enough for plaintiffs to assert . . . that any essential facts that the court may find lacking can be dredged up in discovery.  A plaintiff can bolster a defamation cause of action through discovery, but not [ ] file a conclusory complaint to find out if one exists."

---

[9] Citing *Armijo v. Yakima HMA, LLC*, 868 F. Supp. 2d 1129 (E.D. Wash. 2012), the Court found that FRCP 9(b), as applied to a Washington law malice claim, allowed for plaintiff O&R to allege malice with a conclusory statement.  *See* Abye Decl., Ex. A at 61:22- 63:15 (hearing transcript [Dkt. # 119]).

D&B DEFS' MOTION TO DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

12

SHEARMAN & STERLING LLP
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

1    *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 768 (1989) (internal

2    quotation marks and citation omitted); *see also Donato v. Moldow*, 374 N.J. Super. 475, 501

3    (App. Div. 2005) ("The conclusory allegation that [defendant] published the defamatory

4    statements with actual malice is not sufficient to withstand a motion to dismiss on the

5    pleadings."); *Arista Records, Inc. v. Flea World, Inc.,* 356 F. Supp. 2d 411, 426-27 (D.N.J.

6    2005) ("[C]ase law is clear that, in order to overcome this qualified privilege, Defendants

7    must plead malice. . . . To meet this burden under New Jersey law, Defendants must plead

8    facts sufficient to show that Plaintiffs acted with malice and may not rest on conclusory

9    language.") (citation omitted).[10]

10          Federal and state courts applying Ohio and California law have applied the same

11   pleading standards.  *See Bryan v. Deloitte Tax LLP*, No. 3:12-CV-02606, 2013 WL 5962071,

12   at *1, *5 (N.D. Ohio Nov. 6, 2013) ("[c]onclusory allegations or legal conclusions

13   masquerading as factual allegations will not suffice" and "[m]erely stating the Defendants'

14   representations were inaccurate, without more, are insufficient to support a claim of actual

15   malice") (applying Ohio law); *Crawford v. Geiger*, 996 F. Supp. 2d 603, 619 (N.D. Ohio

16   2014) ("merely alleging that a defendant acted maliciously is not sufficient") (applying Ohio

17   law); *Martin v. Kearney,* 51 Cal. App. 3d 309, 312 (Ct. App. 1975) ("[M]ore than general

18   allegations of malice are required.  Actual facts of malice must be alleged or be apparent

19   from the communications themselves."); *Pavlovsky v. Bd. of Trade of S.F.*, 171 Cal. App. 2d

20   110, 114 (Ct. App. 1959) ("When the privilege appears from the face of the complaint, that

21   pleading must allege malice in fact in order to state a cause of action.  Mere falsity is not

22   enough to show actual malice.") (citations omitted); *Kacludis v. GTE Sprint Commc'ns*

23   *Corp.*, 806 F. Supp. 866, 872 (N.D. Cal. 1992) ("Mere allegations that the statements were

---

24   [10] *See also Lipsky v. Conn. Gen. Life Ins. Co.,* No. 13-CV-00105 DMC JBC, 2013 WL 5354511, at *3 (D.N.J.

25   Sept. 24, 2013) ("Simply stating that the statement was made with malice without additional facts that support
     the notion that Defendants knew the statement was false or had a reckless disregard for the truth is insufficient

26   to survive a motion to dismiss."); *Moriarty v. Classic Auto Grp., Inc*., No. 13-5222 JBS/AMD, 2014 WL
     884761, at *3 (D.N.J. Mar. 6, 2014) (granting motion to dismiss because "[p]laintiff must allege facts from

27   which it may be reasonably inferred that Defendants acted with actual malice.  Plaintiff's Complaint, for the
     most part, contains only legal conclusions.").

28

---

**D&B DEFS' MOTION TO**
**DISMISS COMPLAINTS**
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

13

1   made 'with malice' or with 'no reason to believe the statements were true' are insufficient to

2   rebut the presumption of privilege.") (applying California law) (citation omitted).[11]

3   **B.      Plaintiffs' Factual Allegations Fail to Establish Malice**

4          The Die-Mension, Vinotemp, and Altaflo complaints fail to meet their respective

5   malice pleading standards.  The complaints allege that D&B inflated the list of

6   "inquiries" – which plaintiffs define as the number of instances that "an entity has pulled

7   D&B's report about a small business" – by including instances of its own employees pulling

8   reports and not de-duplicating multiple inquiries by the same subscriber pulling a report.

9   *See, e.g.,* Die-Mension SAC ¶ 38.  And, notwithstanding the admission that D&B makes

10  more than 1.5 million updates to its database daily (*id.* ¶ 26), plaintiffs also allege that D&B

11  "fails to keep current records of the current financial outlook of swaths of small businesses"

12  and "fails to keep accurate and current records of the current re-payment capabilities of

13  swaths of small businesses."  *Id.* ¶¶ 34, 36.  In addition, plaintiffs allege that these purported

14  failures caused D&B to input false information into some credit reports and incorrectly

15  calculate some credit scores, all of which D&B reported to DBCC so that DBCC could

16  market CreditBuilder to the affected business.[12]  *Id.* ¶¶ 32, 34, 36-38.  These allegations,

17

18  _____

19  [11] *See also Crawford v. Geiger*, 996 F. Supp. 2d 603, 618-19 (N.D. Ohio 2014) ("[Defendants] argue that plaintiffs' allegation of malice is conclusory.  They are correct:  merely alleging that a defendant acted maliciously is not sufficient."); *Gressett v. Contra Costa Cnty.*, No. C-12-3798 EMC, 2013 WL 2156278, at

20  *31 (N.D. Cal. May 17, 2013) ("[C]onclusory allegations of knowledge are not sufficient to demonstrate malice in a defamation claim."); *Pham v. Bank of Am.*, No. C10-02613, 2010 WL 3184263, at *5 (N.D. Cal. Aug. 11,

21  2010) (pleading "that Defendants acted 'willfully' and 'with actual malice and/or reckless disregard for the consequences of their actions'" is insufficient to allege malice) (citation omitted); *Wrigley v. Aquaviva*, No. CIV. 2:10-703 WBS, 2010 WL 4718780, at *7 (E.D. Cal. Nov. 12, 2010) ("Plaintiff must plead specific facts,

22  beyond conclusory allegation of malice"); *Jackson v. Mills Corp.*, No. C-07-00662 EDL, 2007 WL 2705215, at

23  *3 (N.D. Cal. Sept. 14, 2007) ("Plaintiff must plead specific facts beyond conclusory allegations of malice. . . . Malice cannot be inferred from the communication itself.") (citations omitted).

24  [12] The Court should note that the core allegations of the Vinotemp and Altaflo defamation claims are non-actionable because they are time-barred. Under California and New Jersey substantive law, a plaintiff must

25  bring an action for defamation within one year of the publication of the purported defamatory speech.  *See* Cal. Civ. Proc. Code § 340 (2015); N.J. STAT. ANN. 2A:14-3 (2015).   In the Vinotemp FAC, plaintiffs allege that

26  D&B put inaccurate information into Vinotemp and CPrint's credit reports, which caused both plaintiffs to purchase CreditBuilder in November 2012 and June 2011, respectively.  Vinotemp FAC ¶¶ 42, 61, 67, 85.

27  These plaintiffs, however, did not bring their claims against D&B until March 24, 2014.  Similarly, plaintiff Altaflo alleges that D&B made defamatory statements that caused it to purchase CreditBuilder in May 2011 and

28  May 2012, but did not bring its claims against D&B until June 20, 2014.  *See* Altaflo FAC ¶¶ 41, 58.

**D&B DEFS' MOTION TO DISMISS COMPLAINTS**
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

14

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

1  however, are insufficient to overcome D&B statutory privilege because they fail to plead the

2  essential element of malice.

3  First, even assuming that including D&B employee credit report pulls and multiple

4  pulls by third-party entities in the inquiry numbers D&B reported to DBCC somehow made

5  these numbers inaccurate – as plaintiffs conclude – there are no facts demonstrating that

6  D&B had "knowledge that the statements [were] false" or acted "with reckless disregard as

7  to their truth or falsity."  *See A & B-Abell Elevator Co.*, 73 Ohio St. 3d at 11-12.

8  Accordingly, the inquiry number allegations do not overcome D&B's qualified privilege.

9  *See Smith v. Hatch*, 271 Cal. App. 2d 39, 47 (Ct. App. 1969) ("Since the qualified privilege

10  creates a presumption that the communication is made innocently and without malice . . . the

11  pleadings must contain affirmative allegations of malice in fact, and malice must exist as a

12  fact in order to destroy the privilege.").

13  Second, plaintiffs' allegations that various credit scores were inaccurate because of

14  D&B's failure "to keep accurate and current records" also fall far short of alleging malice.

15  *See* Die-Mension SAC ¶ 34.  Even assuming that D&B should have updated its database

16  more than the 1.5 million times it currently does on a daily basis (*see id.* ¶ 26), without

17  specific factual allegations that these purported failures were done knowingly or with

18  reckless indifference, plaintiffs' claims amount to nothing more than non-actionable

19  negligence.  *See Hailstone v. Martinez*, 87 Cal. Rptr. 3d 347, 355 (Ct. App. 2008) ("Malice is

20  shown only when the negligence amounts to a reckless or wanton disregard for the truth, so

21  as to imply a willful disregard for, or avoidance of, accuracy."); *Durando v. Nutley Sun*, 209

22  N.J. 235, 251 (2012) ("'a plaintiff must establish that the publisher knew the statement to be

23  false or acted in reckless disregard of its truth or falsity'") (citation omitted); *Printing Mart-*

24  *Morristown*, 116 N.J. at 756 ("Because it would be plaintiffs' burden to prove that

25  defendants acted intentionally and wrongfully without justification, we must examine the

26  complaint to determine if it alleges facts that, if proven, fulfill those requirements."); *see also*

27  *Wynn v. Chanos,* No. 14-CV-04329-WHO, 2014 WL 7186981, at *8 (N.D. Cal. Dec. 16,

28  2014) ("[C]ourts have found that general allegations that a defendant should have known or

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

15

SHEARMAN & STERLING LLP
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

1    should have investigated the truth of his or her statements do not adequately plead actual

2    malice.").

3        Third, plaintiffs' allegation that "D&B profits off the sale of each individual

4    CreditBuilder" (*see* Die-Mension SAC ¶ 39) does not establish that D&B acted with malice.

5    At most, this allegation establishes that D&B had a motive to have DBCC sell Creditbuilder.

6    But courts have rejected allegations of motive as being insufficient to establish malice. *See*

7    *Burns v. Rice*, 157 Ohio App. 3d 620, 638 (Ohio Ct. App. Jun. 22, 2004) ("motives alone are

8    insufficient to establish actual malice"); *Gressett*, 2013 WL 2156278, at *29 ("[M]otive in

9    publishing a "defamatory statement" . . . cannot provide a sufficient basis for finding actual

10    malice.") (internal quotation marks and citation omitted); *DeAngelis v. Hill*, 180 N.J. 1, 14

11    (2004) ("Although [s]pite, hostility, hatred, or the deliberate intent to harm demonstrate

12    possible motives for making a statement, only evidence demonstrating that the publication

13    was made with knowledge of its falsity or a reckless disregard for its truth will establish the

14    actual malice requirement.") (internal quotation marks and citation omitted).

15        Last, plaintiffs' specific pleadings with respect to each putative class representative

16    fair no better than their general allegations.  For example, Die-Mension alleges that D&B

17    "artificially" changed several of its credit scores, entered "false negative payment

18    experiences" into its credit report, and unbeknownst to DBCC included internal D&B

19    inquiries in the inquiry numbers it sent to DBCC concerning Die-Mension.  *See* Die-Mension

20    SAC ¶¶ 41-49.  These acts were allegedly "intended to make [Die-Mension] susceptible to a

21    CreditBuilder solicitation" and caused Die-Mension to purchase CreditBuilder because it

22    "believed it had no choice" but to do so.  *Id.* ¶¶ 44, 54.  Subsequently, notwithstanding

23    plaintiff's purchase of CreditBuilder, D&B allegedly continued to change Die-Mension's

24    scores and insert negative payment history items into plaintiff's report.  *Id.* ¶ 59-62.

25    Notably, the Die-Mension SAC is not only devoid of any facts demonstrating that D&B

26    acted knowingly or recklessly, but affirmatively pleads facts demonstrating that D&B likely

27    did not know of the alleged mistakes because it continued to make the same alleged mistakes

28    even after plaintiff purchased CreditBuilder – which, according to plaintiffs, is the entire

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

16

SHEARMAN & STERLING LLP
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

reason for D&B alleged misconduct.  *Id.* at 7 ("D&B PLACES FALSE INFORMATION ON CREDIT REPORTS TO FOSTER DBCC'S SALES OF CREDITBUILDER").  If D&B were intentionally inputting false information into Die-Mension's report to get Die-Mension to purchase CreditBuilder, it would be illogical for D&B to continue this conduct on three separate occasions after Die-Mension purchased the product, including one that allegedly happened within one week of Die-Mension's purchase.  *Id.* ¶¶ 40, 59.  The Vinotemp and Altaflo complaints also suffer from this same fatal flaw as plaintiffs Vinotemp, CPrint, and Altaflo all claim to have continued to experience alleged inaccuracies in their reports even after purchasing Creditbuilder.  *See* Vinotemp ¶¶ 65, 89; Altaflo ¶ 62.

In short, plaintiffs fail to plead facts substantiating their claim that D&B knowingly or recklessly created inaccurate reports so that DBCC could sell CreditBuilder.  Their complaints boil down to nothing more than a combination of factual allegations contending that some reports may have contained incorrect information tied to conclusory allegations that D&B acted maliciously.  This, however, is insufficient to state a claim requiring malice and renders Die-Mension, Vinotemp, and Altaflo complaints subject to dismissal.  *See, e.g., Pavlovsky*, 171 Cal. App. 2d at 114 ("Mere falsity is not enough to show actual malice.  The complaint here . . . contains no allegation of facts showing that defendant knew or should have known of the alleged falsity of the communication.  Thus it is wholly insufficient to establish malice, and the demurrer to the first count was properly sustained.") (citations omitted); *Bryan*, 2013 WL 5962071, at *5 ("Merely stating the Defendants' representations were inaccurate, without more, are insufficient to support a claim of actual malice") (applying Ohio law); *Arista Records,* 356 F. Supp. 2d at 426-27 ("[I]n order to overcome this qualified privilege, Defendants must plead malice . . . .  To meet this burden under New Jersey law, Defendants must plead facts sufficient to show that Plaintiffs acted with malice and may not rest on conclusory language.").

### C.    Plaintiffs' Theory of Malice is Implausible

Not only do plaintiffs fail to plead facts supporting a claim of actual malice, plaintiffs assert a theory that demonstrates that actual malice is implausible under the circumstances of

1   this case.[13]  Plaintiffs allege that D&B has been in business for 170 years; D&B has an

2   excellent reputation for preparing credit reports; D&B is trusted by the U.S. government and

3   large corporations; D&B makes 1.5 million daily updates to its database; D&B spun off the

4   credit-on-self business when it thought it was interfering with its core business; there were

5   inaccuracies in plaintiffs' respective credit reports; D&B reported inaccurate inquiry

6   numbers to DBCC; plaintiffs purchased a product from DBCC to fix the alleged

7   inaccuracies; D&B received royalties from DBCC; and D&B continued to put inaccurate

8   information into the credit reports of business even after they purchased CreditBuilder.  *See*

9   Die-Mension SAC ¶¶ 15-16, 18-19, 42-43, 54, 60-62.[14]  From these facts, plaintiffs jump to

10  the conclusion that D&B must have acted maliciously and purposely inserted inaccurate facts

11  into credit reports for the purpose of getting plaintiffs to purchase Creditbuilder from DBCC.

12  *Id.* ¶ 39.[15]  But it is implausible that D&B would (i) put at risk its 170-year-old reputation;

13  (ii) undermine its core business–preparing and selling accurate credit reports–in order to

14  provide DBCC with a selling opportunity;[16] and then (iii) fail to remedy the mistakes it

15  allegedly knew about, even after DBCC was paid.

16         Stripped of their conclusory allegations, the complaints, at most, allege that D&B

17  may have made some mistakes in some of the millions of data points it processes daily and

18  may have miscalculated some of its inquiry numbers, but not that these acts were done

19  knowingly or recklessly.  Consequently, the Court should dismiss all of the claims against

20  D&B in the Die-Mension, Vinotemp, and Altaflo complaints *with prejudice* because leave to

---

[13] The implausibility of these claims also make them susceptible to dismissal under fundamental federal standards articulated by the Supreme Court in *Twombly* and *Iqbal*.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  A plaintiff must provide "more than the unadorned, the-defendant-unlawfully-harmed-me-accusation.") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[14] *See also* Vinotemp FAC ¶¶ 6, 16-17, 19-20, 44-45, 84; Altaflo FAC ¶¶ 15-16, 18-19, 43-44, 60-64, 57; FSI FAC ¶ 15-16, 18-19, 45-46, 64, 69-71.

[15] *See also* Vinotemp FAC ¶ 40, Altaflo FAC ¶ 39, and FSI FAC ¶ 39.

[16] Because plaintiffs' theory is that D&B manipulated their credit reports to give DBCC a selling opportunity, D&B joins DBCC's argument on page 13 of Defendant Dun & Bradstreet Credibility Corp.'s Consolidated Motion to Dismiss that Die-Mension lacks standing to bring its unfair trade practice cause of action as a consumer which was allegedly defrauded into purchasing the CreditBuilder product.

---

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

18

SHEARMAN & STERLING LLP
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

1   amend would be futile in light of plaintiffs' implausible theory with regard to malice and

2   because plaintiffs have had multiple chances to cure the defects.  *See e.g., Eclectic Props. E.,*

3   *LLC v. The Marcus & Millichap Co.*, C-09-00511 RMW, 2012 WL 713289, at *17 (N.D.

4   Cal. Mar. 5, 2012) (finding that the flaw in the plaintiffs' claim "is not so much lack of

5   particularity as lack of plausibility . . . indeed, it is the factual details in the complaint that

6   render plaintiffs' theory implausible . . . . Thus, the court finds that it is appropriate to dismiss

7   the complaint without further leave to amend."), *aff'd,* 751 F.3d 990 (9th Cir. 2014); *see also*

8   *Rudwall v. Blackrock, Inc.*, 289 F. App'x 240, 242 (9th Cir. 2008) (affirming dismissal with

9   prejudice where plaintiff's conclusory statement failed to adequately plead malice).

10                                                **CONCLUSION**

11          Plaintiffs have had already had two opportunities to submit viable pleadings to the

12   Court, but have failed to do so on both occasions.  And, as discussed in detail above,

13   plaintiffs' entire theory of malice is deeply flawed and implausible.  Consequently, D&B

14   respectfully requests that the Court dismiss *with prejudice* all of the claims of the Die-

15   Mension, Vinotemp, and Altaflo complaints, as well as FSI's negligence claim.

16

17   DATED:  April 3, 2015                         SHEARMAN & STERLING LLP

18

19                                    By:_____ /s/ *Richard F. Schwed*_____
                                                  Richard F. Schwed

20                                    Richard F. Schwed (admitted *pro hac vice*)
                                      Inyoung Hwang (admitted *pro hac vice*)
21                                    SHEARMAN & STERLING LLP
                                      599 Lexington Avenue
22                                    New York, NY 10022-6069
                                      Telephone:  (212) 848 4000
23                                    Facsimile:  (212) 848 7179
                                      Email:     rschwed@shearman.com
24                                                sarah.hwang@shearman.com

25

26

27

28

D&B DEFS' MOTION TO                    19
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

**SHEARMAN & STERLING LLP**
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

Mikael Abye (admitted *pro hac vice*)
SHEARMAN & STERLING LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111-5994
Telephone:  (415) 616-1100
Facsimile:  (415) 616-1199
Email:     mikael.abye@shearman.com

Charles C. Huber (WSBA No. 18941)
LANE POWELL, PC
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101
Telephone:  (206) 223-7265
Facsimile:  (206) 223-7107
Email:     huberc@lanepowell.com

Attorneys for Defendants
DUN & BRADSTREET CORPORATION
and DUN & BRADSTREET, INC.

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

20

SHEARMAN & STERLING LLP
FOUR EMBARCADERO CENTER, STE. 3800
SAN FRANCISCO, CA 94111-5994
(415) 616-1100

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2015, I electronically filed the foregoing in all cases listed in the caption with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following persons:

Ross E. Shanberg
SHANBERG STAFFORD & BARTZ LLP
19200 Von Karman Avenue, Ste. 400
Irvine, CA 92619
949-622-5444
Email: abartz@ssbfirm.com
      rshanberg@ssbfirm.com

Bradley Jerome Moore
STRITMATTER KESSLER WHELAN CALUCCIO
200 2nd Ave W., 2nd Floor
Seattle, WA 98119-4204
206-448-1777
Fax: 206-728-2131
Email: brad@stritmatter.com

Christopher Collins
Frank J Janecek , Jr.
ROBBINS GELLER RUDMAN & DOWD LLP
655 W. Broadway, Ste 1900
San Diego, CA 92101
619-231-1058
Email: chrisc@rgrdlaw.com
      frankj@rgrdlaw.com

Jack Landskroner
Drew Legando
LANDSKRONER - GRIECO - MERRIMAN, LLC
1360 West 9th, Ste. 200
Cleveland, OH 44113
216-522-9000
Email: jack@lgmlegal.com
      drew@lgmlegal.com

Stuart A. Davidson
ROBBINS GELLER RUDMAN & DOWD, LLP
120 East Palmetto Park Road, Ste 500
Boca Raton, FL 33432
561-750-3000
Email: sdavidson@rgrdlaw.com

---

D&B DEFS' MOTION TO
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)

21

1  Gail E Lees
   Timothy W. Loose
2  Zathrina Zasell G. Perez
   GIBSON DUNN & CRUTCHER LLP
3  333 S. Grand Avenue, 52nd Floor
   Los Angeles, CA 90071-3197
4  213-229-7000
   Email: glees@gibsondunn.com
5        tloose@gibsondunn.com
         zperez@gibsondunn.com
6
   Michael D. McKay
7  Thomas M. Brennan
   MCKAY CHADWELL, PLLC
8  600 University Street, Suite 1601
   Seattle, WA 98101
9  206-233-2800
   Fax: 206-233-2809
10 Email: mdm@mckay-chadwell.com
         tmb@mckay-chadwell.com
11

12                                    /s/ Richard F. Schwed
13                                    Richard F. Schwed

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D&B DEFS' MOTION TO                    22
DISMISS COMPLAINTS
(2:14-cv-00855-TSZ) (2:14-cv-01021-TSZ)          SHEARMAN & STERLING LLP
(2:14-cv-01288-TSZ) (2:14-cv-01404-TSZ)       FOUR EMBARCADERO CENTER, STE. 3800
                                                 SAN FRANCISCO, CA 94111-5994
                                                        (415) 616-1100