1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6

7

8

9

10

11

DIE-MENSION CORPORATION,
individually and on behalf of all others
similarly situated,

                    Plaintiff,

        v.

DUN & BRADSTREET CREDIBILITY
CORPORATION, et al.,

                    Defendants.

C14-855 TSZ

ORDER

12        THIS MATTER comes before the Court on a motion to dismiss brought by

13  defendant Dun & Bradstreet Credibility Corporation ("DBCC"), docket no. 93.  Having

14  reviewed all papers filed in support of, and in opposition to, DBCC's motion, the Court

15  enters the following order.

16  **Background**

17        Plaintiff Die-Mension Corporation brings this action on behalf of itself and a class

18  of all entities in Ohio that purchased DBCC's product known as CreditBuilder, which is

19  an Internet-based system for credit self-monitoring.  DBCC acquired CreditBuilder from

20  defendants Dun & Bradstreet Corporation and Dun & Bradstreet, Inc. (collectively,

21  "D&B"), along with licenses to use the "Dun & Bradstreet" name, brand, logo, and trade

22  dress.  D&B collects financial information and issues credit reports, scores, and ratings

23

ORDER - 1

on businesses, which are used by the government, as well as private companies, to make contracting and other commercial decisions.  In connection with credit information, D&B uses the Data Universal Number System ("DUNS"), pursuant to which businesses are assigned unique identifiers.

According to plaintiff, when businesses contact D&B concerning any problem with their credit reports, they are "uniformly and seamlessly routed to a DBCC sales representative who tries to sell them CreditBuilder, rather than attempt to fix the problem."  2d Am. Compl. at ¶ 21 (docket no. 91).  Plaintiff does not allege, however, that it was solicited in this manner.  Instead, plaintiff indicates that, on two occasions, D&B advised DBCC of a score change, and that, both times, DBCC attempted via form letter to sell CreditBuilder to plaintiff.  *See id.* at ¶¶ 42, 43, 53, & 54.  Plaintiff contends that, because D&B "seeded" its credit report with false information,[1] plaintiff "believed it had no choice" but to purchase CreditBuilder for $39.99 per month for one year.  *Id.* at ¶¶ 54-55.

Plaintiff states that it was confused by various representations made by DBCC and would not have bought CreditBuilder but for these representations.  *See id.* at ¶¶ 53 & 57.  Plaintiff alleges that DBCC holds itself out as D&B and holds CreditBuilder out as a D&B-affiliated product.  *Id.* at ¶ 53.  The form solicitation letter DBCC sent to plaintiff in February 2012 bore the "Dun & Bradstreet" logo and "was addressed to [plaintiff] by

---

[1] Plaintiff concedes that DBCC was not advised by D&B of any actions taken by D&B to inflate the number of credit inquiries about a business, which would negatively impact its credit rating.  *See* 2d Am. Compl. at ¶¶ 6, 38, 47-49, & 51 (docket no. 91).

its DUNS number." *Id.* at ¶ 53.  DBCC also uses marketing materials that bear D&B's logo, refers to D&B's databases as "***our***" databases, describes credit reporting functions performed by D&B as something "we" do, and indicates that "companies are coming to ***us***" (as opposed to D&B) for credit reports.  *Id.* at ¶¶ 25-27 (emphasis in original). Moreover, DBCC's and D&B's web addresses are similar, namely "www.dandb.com" and "www.dnb.com," respectively.  *Id.* at ¶ 20.

Plaintiff accuses DBCC of representing that CreditBuilder was "the solution to false entries" on plaintiff's credit report, and indicates that it would not have purchased the product but for such representation.  *Id.* at ¶ 58; *compare id.* at ¶ 53 (stating that DBCC's form letter "offered CreditBuilder as the solution to 'positively impact [plaintiff's] scores and ratings.'").  Plaintiff asserts that, in April 2012, despite its purchase of CreditBuilder, a false item appeared on its credit report, namely an unpaid bill in the amount of $2,500, and that both its Supplier Evaluation Risk ("SER") rating and its Financial Stress score worsened even though no material change in the manner in which plaintiff conducted business had occurred.  *Id.* at ¶¶ 59-60.  Plaintiff has brought two claims against DBCC, namely violation of Ohio's Deceptive Trade Practice Act ("ODTPA") and negligent misrepresentation.  DBCC has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss both claims.

**Discussion**

**A.**   **Standard for Motion to Dismiss**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and

1   contain more than a "formulaic recitation of the elements of a cause of action." _Bell Atl._

2   _Corp. v. Twombly_, 550 U.S. 544, 555 (2007).  The complaint must indicate more than

3   mere speculation of a right to relief.  _Id._  When a complaint fails to adequately state a

4   claim, such deficiency should be "exposed at the point of minimum expenditure of time

5   and money by the parties and the court."  _Id._ at 558.  A complaint may be lacking for one

6   of two reasons:  (i) absence of a cognizable legal theory, or (ii) insufficient facts under a

7   cognizable legal claim.  _Robertson v. Dean Witter Reynolds, Inc._, 749 F.2d 530, 534 (9th

8   Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the

9   plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  _Usher v._

10  _City of Los Angeles_, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is

11  whether the facts in the complaint sufficiently state a "plausible" ground for relief.

12  _Twombly_, 550 U.S. at 570.  If the Court considers matters outside the complaint, it must

13  convert the motion into one for summary judgment.  Fed. R. Civ. P. 12(d).  If the Court

14  dismisses the complaint or portions thereof, it must consider whether to grant leave to

15  amend.  _Lopez v. Smith_, 203 F.3d 1122, 1130 (9th Cir. 2000).

16  **B.    Ohio Deceptive Trade Practices Act**

17        The ODTPA enumerates several deceptive trade practices, including passing off

18  one's goods or services as those of another, causing a likelihood of confusion as to the

19  source of one's goods or services or as to one's affiliation, connection, or association

20  with another, and representing that one's goods or services have characteristics, uses, or

21  benefits they do not have or that one has a status, affiliation, or connection one does not

22  have.  Ohio Rev. Code § 4165.02(A)(1)-(3)&(7).  The ODTPA authorizes a civil action

23

1   for actual damages by a "person who is injured by a person who commits a deceptive

2   trade practice."  Ohio Rev. Code § 4165.03(A)(2).  The term "person" is defined as "an

3   individual, corporation, . . . , or any other legal or commercial entity."  Ohio Rev. Code

4   § 4165.01(D).  A plaintiff in an action under § 4165.03 need not prove that the parties are

5   competitors.  Ohio Rev. Code § 4165.02(B).

6         Ohio courts have repeatedly analogized the ODTPA to the federal Lanham Act,

7   and they apply to the ODTPA the same analysis used by federal courts under the Lanham

8   Act.  *See* *Bedford Auto Dealers Ass'n v. Mercedes Benz of N. Olmsted*, 2012 WL 760626

9   at *3 (Ohio Ct. App. Mar. 8, 2012); *Dawson v. Blockbuster, Inc.*, 2006 WL 1061769 at

10  *3 (Ohio Ct. App. Mar. 16, 2006); *Corrova v. Tatman*, 844 N.E.2d 366, 369 (Ohio Ct.

11  App. 2005); *Chandler & Assocs., Inc. v. Am.'s Healthcare Alliance, Inc.*, 709 N.E.2d

12  190, 195 (Ohio Ct. App. 1997); *Yocono's Rest., Inc. v. Yocono*, 651 N.E.2d 1347, 1350-

13  51 (Ohio Ct. App. 1994); *Cesare v. Work*, 520 N.E.2d 586, 590 (Ohio Ct. App. 1987);

14  *Blankenship v. CFMOTO Powersports, Inc.*, 944 N.E.2d 769, 776 (Clermont Cnty., Ohio

15  Ct. Common Pleas 2011)  Like the ODTPA, the Lanham Act allows "any person who

16  believes that he or she is likely to be damaged" by one of the enumerated acts to

17  commence litigation.  *See* 15 U.S.C. § 1125(a)(1).  The United States Supreme Court

18  recently announced new standards for determining who may sue under the Lanham Act,

19  *see* *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), and

20  the Court must undertake an analysis of whether and how *Lexmark* might influence the

21  Ohio Supreme Court in construing the ODTPA.

22

23

ORDER - 5

The _**Lexmark**_ Court adopted a two-pronged test for assessing whether Congress authorized suit under the Lanham Act.  Under the first "zone-of-interests" inquiry, to proceed under the Lanham Act, a plaintiff "must allege an injury to a commercial interest in reputation or sales."  _See_ 134 S. Ct. at 1389-90.  According to _Lexmark_, the zone of interests protected by the Lanham Act does not include an injury suffered as a result of being misled or hoodwinked into purchasing a disappointing or inferior product.  _Id._ at 1390.  The second proximate-cause standard asks whether the alleged harm has "a sufficiently close connection to the conduct the statute prohibits," and ordinarily requires that an economic or reputational injury flow directly from the unlawful conduct at issue.  _Id._ at 1390-91.  In employing this methodology, the _Lexmark_ Court eschewed any bright-line or categorical approach, indicating that a rule prohibiting suits by non-competitors would "read too much" into the term "unfair competition."  _Id._ at 1392.

Prior to the _Lexmark_ decision, a number of circuits had held that consumers were barred from bringing suit under the Lanham Act.  _See_ _Made in the USA Found. v. Phillips Foods, Inc._, 365 F.3d 278 (4th Cir. 2004); _Barrus v. Sylvania_, 55 F.3d 468 (9th Cir. 1995); _Serbin v. Ziebart Int'l Corp._, 11 F.3d 1163 (3d Cir. 1993); _Colligan v. Activities Club of N.Y., Ltd._, 442 F.2d 686 (2d Cir. 1971).  Ohio courts had relied on these earlier federal decisions to conclude that, because the ODTPA is interpreted consistently with the Lanham Act, consumers may not pursue claims under the ODTPA.  _See_ _Hamilton v. Ball_, 7 N.E.3d 1241, 1253 (Ohio Ct. App. 2014); _Dawson_, 2006 WL 1061769 at *4; _Blankenship_, 944 N.E.2d at 777-78.  The Ohio Supreme Court, however, has not yet

addressed the issue.[2]  The Court would normally treat both _Hamilton_ and _Dawson_, which were issued by appellate courts in Ohio, as "authoritative" given the absence of any showing that the Ohio Supreme Court would decide the matter differently, _see Holbrook v. La.-Pac. Corp._, 533 Fed. App'x 493, 497 (6th Cir. 2013), but those cases predate _Lexmark_, which altered the Lanham Act landscape.

Subsequent to _Lexmark_, but without citing to the United States Supreme Court's decision, a judge in the Southern District of Ohio concluded that consumers have standing to bring actions under the ODTPA, reasoning that an individual is explicitly included within the meaning of a "person who is injured" and entitled to commence suit. _See Schumacher v. State Auto. Mut. Ins. Co._, 47 F. Supp. 3d 618, 632 (S.D. Ohio 2014). Although the same conclusion was drawn in _Bower v. Int'l Bus. Machs., Inc._, 495 F. Supp. 2d 837 (S.D. Ohio 2007) (a case decided without the benefit of _Lexmark_), all other federal courts in Ohio that have addressed the matter have reached the opposite result. _See Smith v. Smith & Nephew, Inc._, 5 F. Supp. 3d 930 (S.D. Ohio 2014); _Phillips v. Philip Morris Cos._, 290 F.R.D. 476 (N.D. Ohio 2013); _Gascho v. Global Fitness Holdings, LLC_, 863 F. Supp. 2d 677 (S.D. Ohio 2012); _Robins v. Global Fitness Holdings, LLC_, 838 F. Supp. 2d 631 (N.D. Ohio 2012); _see also Holbrook_, 533 Fed. App'x at 497-98. These latter cases are more consistent with the holding in _Lexmark_, which recognizes

---

[2] In _McKinney v. Bayer Corp._, 744 F. Supp. 2d 733 (N.D. Ohio 2010), the judge indicated that she would certify the question to the Ohio Supreme Court, _id._ at 752, but the plaintiff voluntarily dismissed his ODTPA claim before any certification issued, _see Robins v. Global Fitness Holdings, LLC_, 838 F. Supp. 2d 631, 649 n.3 (N.D. Ohio 2012); _see also Schumacher v. State Auto. Mut. Ins. Co._, 47 F. Supp. 3d 618, 630 n.16 (S.D. Ohio 2014).

ORDER - 7

1  that, although consumers are not categorically precluded from bringing suit, their

2  interests are not usually of the type protected by the Lanham Act.  *See* 134 S. Ct. at 1390.

3  Plaintiff attempts to distinguish the ODTPA from the Lanham Act on the ground

4  that the ODTPA explicitly disclaims any requirement of competition between the parties.

5  The *Lexmark* Court, however, made clear that non-competitors are not barred from

6  pursuing actions under the Lanham Act if they meet the zone-of-interests and proximate-

7  cause standards.  *See id.* at 1394.  Given the similarities between the federal and state

8  statutes, the Court is persuaded that the Ohio Supreme Court would adopt the two-part

9  standard articulated in *Lexmark* in deciding who may pursue a claim under the ODTPA.[3]

10  In this case, although plaintiff qualifies as a "person" under the ODTPA (as well

11  as the Lanham Act), it does not allege the type of injury for which the statute provides

12  redress.  Plaintiff does not allege that either the representations by DBCC that induced it

13  to buy CreditBuilder or its purchase or use of the product harmed its reputation or

14  diminished its sales.  Any allegations of reputational injury and/or lost sales resulting

15  from inaccurate credit ratings relate solely to the claims directed at D&B.  Plaintiff's

16  ODTPA claim against DBCC focuses on CreditBuilder's failure to live up to its billing as

17  the "solution" to fix plaintiff's credit scores.  *Lexmark* teaches that such claim would not

18  be under the aegis of the Lanham Act, *see* 134 S. Ct. at 1390, and the Court concludes the

19  _____

20  [3] Indeed, in analyzing whether a party has standing in another context, the Ohio Supreme Court has
applied the "zone of interests" test, which the *Lexmark* Court reiterated from *Ass'n of Data Processing
Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970).  *See State ex rel. Dayton Newspapers, Inc. v. Phillips*,

21  351 N.E.2d 127, 129 (Ohio 1976).  The Ohio appellate courts have followed suit.  *See Fair Housing
Advocates Ass'n, Inc. v. Chance*, 2008 WL 2229530 at *1 (Ohio Ct. App. June 2, 2008); *Save the Lake v.*

22  *City of Hillsboro*, 815 N.E.2d 706, 708 (Ohio Ct. App. 2004).

23

ORDER - 8

1  Ohio Supreme Court would hold that such claim is also beyond the reach of the ODTPA.

2  Whether plaintiff can make the requisite allegations to state a claim under the ODTPA

3  remains to be seen, but in the meanwhile, as to the ODTPA claim, DBCC's Rule 12(b)(6)

4  motion is GRANTED, and Count I of the Second Amended Complaint, docket no. 91 at

5  ¶¶ 70–74, is DISMISSED, without prejudice, and with leave to file a motion to amend.

6  **C.     Negligent Misrepresentation**

7         Ohio courts define negligent misrepresentation as occurring when one supplies

8  false information for the guidance of others in their business transactions.  *See McMullian*

9  *v. Borean*, 857 N.E.2d 180, 185 (Ohio Ct. App. 2006); *Federated Mgmt. Co. v. Coopers*

10 *& Lybrand*, 738 N.E.2d 842, 863 (Ohio. Ct. App. 2000); *Leal v. Holtvogt*, 702 N.E.2d

11 1246, 1253 (Ohio Ct. App. 1998).  A claim for negligent misrepresentation "does not lie

12 for omissions," but instead must be premised on "some affirmative false statement."

13 *McMullian*, 857 N.E.2d at 185; *Leal*, 702 N.E.2d at 1253.  To prevail on a claim of

14 negligent misrepresentation, a plaintiff must also prove that the defendant failed to

15 exercise reasonable care or competence in obtaining or communicating the information at

16 issue.  *Leal*, 702 N.E.2d at 1253; *see also Federated Mgmt.*, 738 N.E.2d at 863.

17        In Count II of the Second Amended Complaint, plaintiff lists fourteen (14) alleged

18 misrepresentations by DBCC, which fall into three groups:  (i) statements touting the

19 benefits of CreditBuilder; 2d Am. Compl. at ¶¶ 76(b), (i), & (l)–(n) (docket no. 91);

20 (ii) statements blurring the distinction between DBCC and D&B, including those using

21 the plural pronouns "we," "our," and "us" to describe DBCC's business; *see id.* at

22 ¶¶ 76(a) & (c); and (iii) statements about a business's credit profile; *id.* at ¶¶ 76(d)–(h) &

23

(j)–(k).  With respect to the first category, plaintiff's allegations that DBCC touted

CreditBuilder as the "solution" to its credit woes, or as something that would "help"

plaintiff and provide a "meaningful process for disputing negative trade experiences,"

recount mere puffery and, absent more specificity, are not actionable.[4]  *See Phillips v.*

*State Farm Fire & Cas. Co.*, 1993 WL 386291 at *3 (Ohio Ct. App. Sep. 27, 1993)

("Under Ohio law, in order to establish fraud or misrepresentation, there has to be a

representation concerning a present or past fact."); *see also Davis v. Byers Volvo*, 2012

WL 691757 (Ohio Ct. App. Feb. 24, 2012) (holding that puffery is not actionable under

Ohio's Consumer Sales Practices Act).

As to any confusion about the relationship between DBCC and D&B, plaintiff's

pleading lacks the specificity required to state a plausible claim.  Plaintiff does not

indicate when, in what context, or to whom DBCC made the statements at issue.

Moreover, plaintiff has not even alleged that DBCC failed to exercise reasonable care or

competence in making such representations.  Finally, with regard to statements about a

business's credit profile, including those concerning the number of "unique" inquiries

being made, some of which were duplicates or D&B's own inquiries, and those

indicating that DBCC had accurate, up-to-date information, when it did not, plaintiff's

negligent misrepresentation claim is belied by its acknowledgement that DBCC was not

advised by D&B about any "padding" of the inquiries.  *See supra* note 1.  Thus, with

---

[4] To the extent plaintiff's negligent misrepresentation claim is grounded on a theory that DBCC should
have disclosed methods for addressing the problems on plaintiff's credit report other than purchasing
CreditBuilder, *see* 2d Am. Compl. at ¶ 58 (docket no. 91), it is based on an omission and is not cognizable
under Ohio law.

ORDER - 10

respect to plaintiff's negligent misrepresentation claim, DBCC's Rule 12(b)(6) motion is GRANTED, and Count II of the Second Amended Complaint, docket no. 91 at ¶¶ 75–78, is DISMISSED, without prejudice, and with leave to file a motion to amend.

**<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1)    DBCC's motion to dismiss, docket no. 93, is GRANTED;

(2)    Counts I and II of the Second Amended Complaint, docket no. 91, are DISMISSED, without prejudice, and with leave to file a motion to amend; any such motion shall include a redlined version of a proposed third amended complaint and shall be filed within thirty-five (35) days of the date of this Order; and

(3)    The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 9th day of September, 2015.

Thomas S. Zilly
United States District Judge

ORDER - 11